CJ2020 5001 – Mai



IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

OCT 19 2020

RICK WARREN
COURT CLERK

34

| | | |
|---|---|---|
| (1) | ANTHONY P. TUFARO, D.D.S., M.D., F.A.C.S., | ) ) ) |
| | Plaintiff, | ) ) ) |
| | v. | ) Case No. **CJ-2020-5001** ) |
| (1) | STATE OF OKLAHOMA, ex rel. THE BOARD of REGENTS for the UNIVERSITY of OKLAHOMA, | ) ) ) ) ) |
| (2) | JASON R. SANDERS, M.D., MBA, in his individual capacity and his official capacity as the Senior Vice President and Provost, | ) ) ) ) ) ) |
| (3) | JOHN P. ZUBIALDE, M.D., in his individual capacity and his official Capacity as the Executive Dean of the College of Medicine, | ) ) ) ) ) |
| (4) | STEVEN M. SULLIVAN, D.D.S., F.A.C.S., F.A.C.D., in his individual Capacity and his official capacity as Chair of the Department of Surgical Sciences; | ) ) ) ) ) ) ) |
| (5) | KEVIN S. SMITH, D.D.S., in his individual capacity only, | ) ) ) |
| (6) | PAUL S. TIWANA, D.D.S., in his individual capacity only, | ) ) ) |
| (7) | BARISH H. EDIL, M.D., F.A.C.S., in his individual capacity and his official capacity as the Chair of the Department of Surgery, | ) ) ) ) ) |
| | Defendants. | ) **JURY TRIAL DEMANDED** |

## PETITION

Plaintiff, Dr. Anthony P. Tufaro, D.D.S., M.D., F.A.C.S. ("Dr. Tufaro") alleges and states

1

**EXHIBIT 3**

as follows:

## PARTIES

1. Dr. Tufaro, an individual, is a citizen of the State of Oklahoma residing in Oklahoma County. During all relevant times, Dr. Tufaro was a Professor of Surgery, Chief of Plastic Surgery, Plastic and Reconstruction Surgery and Surgical Oncology, Head and Neck at the University of Oklahoma, College of Medicine ("OU College of Medicine").

2. Defendant, State of Oklahoma, ex rel. The Board of Regents for the University of Oklahoma ("OU"), is an Oklahoma Constitutional agency. The OU College of Medicine is a part of OU and is located in, and employed Dr. Tufaro in, Oklahoma County.

3. Dr. Jason R. Sanders, M.D., MBA ("Dr. Sanders") is Senior Vice President and Provost of the University of Oklahoma Health Sciences Center and is sued in his individual and official capacities. Upon information and belief, Dr. Sanders resides in Oklahoma County.

4. Dr. John P. Zubialde ("Dr. Zubialde") is the Executive Dean of the OU College of Medicine of the University of Oklahoma Health Sciences Center and is sued in his individual and official capacities. Upon information and belief, Dr. Zubialde resides in Oklahoma County.

5. Dr. Barish H. Edil, M.D., F.A.C.S. ("Dr. Edil") is Chair of the Department of Surgery of the University of Oklahoma College of Medicine. Dr. Edil is sued in his individual and his official capacities.

6. Dr. Steven M. Sullivan ("Dr. Sullivan") is the chair of the Department of Surgical Sciences of the University of Oklahoma School of Dentistry Health Sciences Center and is sued in his individual and official capacities. Upon information and belief, Dr. Sullivan resides in Oklahoma County. Dr. Sullivan is sued in his individual and official capacities.

7. Dr. Kevin S. Smith ("Dr. Smith") is a member of the faculty at the OU College of

EXHIBIT 3

Dentistry and upon information and belief resides in Oklahoma County. Dr. Smith is sued in his individual capacity

8. Dr. Paul S. Tiwana ("Dr. Tiwana") is a member of the faculty at the OU College of Dentistry and upon information and belief resides in Oklahoma County. Dr. Tiwana is sued in his individual capacity.

9. At all times relevant hereto, Dr. Sanders, Dr. Zubialde, Dr. Edil and Dr. Sullivan (collectively the "Official Capacity Defendants") were each acting under color of law individually and/or in concert with each other when the acts complained of occurred, all of which took place in Oklahoma County.

10. At all times relevant hereto, Dr. Sullivan, Dr. Smith and Dr. Tiwana (collectively the "Oral Surgeons") operated the Oral Facial Surgery Center in Oklahoma County, a private oral surgery practice operating outside of the purview of OU.

## JURISDICTION AND VENUE

11. Dr. Tufaro brings this suit pursuant to 42 U.S.C. § 1983, and the rights secured to him thereunder, including his rights under the First and Fourteenth Amendments to the Constitution of the United States.

12. This action also arises under the laws of the State of Oklahoma, including Article 2, §§ 2, 3, 7 and 22 of the Oklahoma Constitution, Oklahoma tort law, Oklahoma public policy, and the Oklahoma Governmental Tort Claims Act, 51 O.S. §§ 151, *et seq.*

13. This court has subject matter jurisdiction of Dr. Tufaro's claims against the Defendants.

14. Dr. Tufaro seeks money damages and attorney fees against the Official Capacity Defendants, Dr. Zubialde, Dr. Edil, Dr. Sullivan, and Dr. Sanders acting under color of law in their

3

**EXHIBIT 3**

individual capacities, for deprivation of his First Amendment right to speak about matters of public concern and his due process rights guaranteed by the Fourteenth Amendment. Subject matter jurisdiction for these claims is pursuant to 42 U.S.C. § 1983 and 51 O.S. §§ 151, *et seq*. Consistent with 51 O.S. § 156, Dr. Tufaro served his notice of tort claim to OU on or about May 5, 2020. OU did not respond to the notice and more than ninety (90) days have passed since OU received the notice, hence the notice of tort claim has been deemed denied.

15.  This court has subject matter jurisdiction of the remaining claims. Venue in this court is appropriate as to all defendants.

## STATEMENT OF FACTS

16.  Dr. Tufaro is board certified in plastic surgery and oral and maxillofacial surgery. Prior to joining the University of Oklahoma, Dr. Tufaro practiced medicine at Johns Hopkins Hospital in Baltimore where the main focus of his practice included major reconstruction of the chest and abdominal wall, head and neck surgical oncology, management of soft tissue cancers, skin cancer treatment including melanoma and craniofacial surgery and reconstruction.

17.  Additionally, Dr. Tufaro completed a fellowship in head and neck surgical oncology at Memorial Sloan Kettering Cancer Center, New York. He completed a fellowship in plastic, reconstructive and craniofacial surgery and did his general surgery residency at Johns Hopkins University, Baltimore. He completed an oral and maxillofacial surgery residency at Nassau County Medical Center, New York. He earned his medical degree at Hahnemann University School of Medicine, Philadelphia and his degree in dentistry at New York University College of Dentistry.

18.  On March 23, 2017, OU extended a "consecutive term" faculty appointment offer to Dr. Tufaro to serve in the academic position of Professor of Surgery and Chief of Plastic

4

EXHIBIT 3

Surgery. This position was both a teaching and a clinical surgical position. The offer was for an appointment on the Clinician Educator pathway as defined by the College of Medicine Promotion and Tenure guidelines.

19. Dr. Tufaro accepted the offer on April 30, 2017.

20. On or about September 15, 2017, the Board of Regents approved the appointment and delivered Dr. Tufaro his Contract of Employment for a twelve (12) month "consecutive term" appointment as Professor of Surgery ("Contract").

21. The Contract was signed by OU on September 15, 2017 and Dr. Tufaro on October 3, 2017. The Contract provided that "Full-time faculty who hold a regular faculty title as assistant professor or above and who are ineligible for tenure shall be eligible for renewal consecutive term appointments with no restriction placed on the number of terms that may be served." The Contract further specified Dr. Tufaro could receive tenure at some point upon the approval of the chair (Dr. Edil), the Dean (Dr. Zubialde), and the Senior Vice President and Provost (Dr. Sanders).

22. The OU Health Science Center Faculty Handbook § 3.2.1(c) ("Faculty Handbook"), which forms part of the agreement between Dr. Tufaro and OU, provides that "Consecutive term appointments are automatically renewed for the next fiscal year unless notification of non-renewal or termination is given in accordance with Section 3.2.7."

23. Dr. Tufaro's consecutive term Contract was automatically renewed in October, 2018.

24. On or about May 14, 2019, during the second year of Dr. Tufaro's consecutive term contract, Dr. Sanders notified Dr. Tufaro that his Contract would not be renewed. Dr. Sanders did not provide any reason for the decision.

EXHIBIT 3

25. Pursuant to § 3.2.7(b) of the Faculty Handbook, because Dr. Tufaro was in the second year of his Contract, the termination could not become effective until 180 days had passed, unless the reason for the termination was one of those enumerated in § 3.16.1 of the Faculty Handbook. Dr. Sanders' notification did not specify any reason, let alone one of the enumerated reasons justifying an immediate discharge. Thus, Dr. Tufaro's termination was effective on November 14, 2019.

26. Section 3.16.1 of the Faculty Handbook requires that "A faculty member against whom the imposition of ... termination of employment ... must be informed in writing of the basis for the action." The section further outlines specific enumerated reasons termination could be sought, but terminations may occur for other reasons not enumerated.

27. The only permitted grounds for immediate termination stated in §3.16.1 are: (1) "Being placed on the United States Department of Health and Human Services' list of excluded individuals and entities;" (2) "Violations of law to which the faculty member has pleaded guilty or nolo contendere or that have been adjucicated before a court of competent jurisidction that prevent the faculty member from satisfactorily fulfilling professionl duties or responsibilites ...;" (3) "Loss or suspension of a professional license; loss or suspension of prescribing authority; voluntary or involuntary loss of clinical privileges; inability to obtain or maintain enrollment as a provider with an insurer; or inability to obtain or maintain professionl liability insurance coverage;" or (4) "poor clinical performance, unprofessional behavior, or conduct that jeopardizes patient safety[.]"

28. Section 3.16(b) of the Faculty Handbook further limits appeals of terminations, which can go to the Faculty Appeals Board to these four grounds for immediate termination.

6

**EXHIBIT 3**

29. There was no valid justification for OU not to have renewed Dr. Tufaro's Contract, whether enumerated in § 3.16.1 or not.

30. Dr. Sanders did not include a reason for the termination because the actual basis for the termination was motivated by unlawful reasons, namely because Dr. Tufaro reported malfeasance by the Oral Surgeons and others.

31. During his employment at OU, Dr. Tufaro became aware of potentially unlawful practices and/or practices which are in contravention of Oklahoma's public policy by OU faculty and physicians, in particular the Oral Surgeons.

32. For example, Dr. Tufaro discovered the Oral Surgeons used their faculty positions to funnell cash patients or patients through the Oklahoma prison system (paid for by the State) to their private practice clinic, Oral Facial Surgery Center. The Oral Surgeons were required to submit all payments through OU, but did not. This practice appears to be a violation of the agreement between OU and the Oklahoma prison contract, OU policy and/or medicare/medicaid regulations.

33. Dr. Tufaro also discovered that the Oral Surgeons would require patients to return to OU Medical Center after treatment was started if the private practice was no longer able to be compensated for the work. Dr. Tufaro believes this practice is a violation of medicare and medicaid regulations.

34. Dr. Tufaro reported the Oral Surgeon's conduct to Dr. Edil, Dr. Roxie M. Albrecht, and Dr. Zubialde both verbally and in writing beginning in early 2019. The Dean of the Dental School, Dr. Raymond A. Cohlmia, told Dr. Tufaro after reading Dr. Tufaro's reports regarding the Oral Surgeons, that he would fire Dr. Tufaro for the reports.

35. Dr. Tufaro further raised concerns about the failure to record medication use as required by law and leaving a medication closet open instead of locking it, and failing to secure

7

EXHIBIT 3

medication in a safe manner. Dr. Tufaro also raised concerns over the lack of accountability regarding missing medications the disappearance of over $16,000 worth of injectable drugs from the plastic surgery clinic. Dr. Tufaro reported his concerns to Dr. Edil and Warren Churchill, M.B.A., in early, 2019 and even offered remedies to secure the injectable drugs all of which were refused.

36. In Spring 2019, Dr. Tufaro also raised concerns to hospital administrators, including Dr. Edil and Warren Churchill, over HIPPA violations as patients were forced to walk through in-patient rooms where other patients were being cared for in order to get to the Plastic Surgery clinic.

37. In late fall 2018, Dr. Tufaro raised concerns about residents caring for patients without an attending surgeon. These concerns were raised to Dr. Edil, Warren Churchill and Dr. Postier.

38. Despite Dr. Tufaro's excellent performance, but shortly after reporting the serious public concern issues, on March 26, 2019, Dr. Tufaro received a negative acaedemic performance evaluation – the first in his exemplary and impressive career. The evaluation was entirely subjective and ignored stellar patient evaluations and outcomes and overwhelmingly positive reviews by students and peers outside OU. Dr. Tufaro received the negative evaluation during the same period he was reporting his concerns outlined herein, and in particular regarding the Oral Surgeons.

39. Dr. Tufaro signed the evaluation on March 26, 2019. At the time of his signature, there was nothing in the box titled "Department Chair action items." However, on March 29, 2019, after Dr. Tufaro signed the evaluation, Dr. Edil added handwriting to the evaluation. Number

1 on the list of "action items" was to require Dr. Tufaro to "improve relationships with the School of Dentistry" which includes the Oral Surgeons.

40. Dr. Edil advised Dr. Tufaro at the time that the Oral Surgeons are "vicious" people and ran the School of Dentistry. Dr. Edil further advised Dr. Tufaro that he should find a way to work with the Oral Surgeons.

41. On May 14, 2019, Dr. Sanders sent the memorandum to Dr. Tufaro notifying him that he was being terminated without any explanation.

42. None of the four enumerated reasons stated in § 3.16.1 of the Faculty Handbook for immediate termination were cited or could have possibly applied to Dr. Tufaro.

43. Based on his appointment on a "Consecutive Term" basis, the Faculty Handbook requires a valid reason for Dr. Tufaro's termination

44. Dr. Tufaro had a reasonable expectation of continued employment.

45. Dr. Tufaro was terminated as a result of his speaking out about the Oral Surgeons' malfeasance and complaining about HIPPA violations and other matters of public concern. This conclusion is based, *inter alia*, on the (a) comments (verbal and written) from Dr. Sanders, Dr. Zubialde, Dr. Edil and the Oral Surgeons; (b) the March, 2019, evaluation requring Dr. Tufaro to get along with the School of Dentistry; (c) Dr. Cohlmia's comment that he would have fired Dr. Tufaro for the reports about the Oral Surgeons; (d) the temporal proximity between Dr. Tufaro's appropriate complaints and his negative performance evaluationl and (e) the temporal proximity between Dr. Tufaro's appropriate complaints and the notification of his termination.

46. Dr. Tufaro's terimination occurred because the Oral Surgeons wanted Dr. Tufaro removed from OU's faculty to cover up their wrongdoing. Their successful effort to have him

EXHIBIT 3

removed by OU through the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders was in retaliation for Dr. Tufaro's reporting of their malfeasance.

47. Even after Dr. Tufaro was no longer employed by OU, Defendants continued their campaign against Dr. Tufaro. Dr. Tufaro was informed by his current employer that Dr. Suhair Maquisi faculty and acting Chief of Plastic Surgery said they would not allow OU residents to work with Dr. Tufaro either at his new employment or at OU Medical Center (where Dr. Tufaro still enjoys priviliges).

48. Further, Dr. Tufaro's current employer was told Dr. Suhair Maquisi that Dr. Tufaro's conduct at OU was subpar, which is false.

49. Dr. Tufaro was not given a hearing with respect to the termination of his contract with OU. Thus, Dr. Tufaro's fundamental due process rights were violated. The Faculty Handbook required OU to provide Dr. Tufaro with the basis of his termination, but none was provided.

50. Dr. Tufaro had a property right in his continued employment as defined by his Contract, the Faculty Handbook and by law.

51. Dr. Tufaro's speech was on matters of public concern and was protected by the First Amendment to the Constitution of the United States and Article 2, § 22 of the Oklahoma Constitution.

52. Dr. Tufaro's interest in commenting on matters of public concern greatly outweighs any interest the University might have in abridging Dr. Tufaro's free speech rights. In fact, his speech was important to the health and welfare of patients, exposing the potential misuse of federal and state funds, violations of federal Medicare and Medicaid laws, and violations of HIPPA regulations.

10

EXHIBIT 3

## COUNT I
## RETALIATION FOR EXERICISING RIGHT OF FREE
## SPEECH ON MATTERS OF PUBLIC CONCERN

(Against OU and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders in their invididual and official capacities)

53. Dr. Tufaro incorporates the allegations contained in Paragraphs of 1-52 of the Petition herein.

54. Dr. Tufaro engaged in speech on matters of public concern regarding the conduct described herein, including but not limited to the Oral Surgeons malfeasance as described herein.

55. Dr. Tufaro's speech on these matters of public concern was a substantial or motivating factor in the decision to terminate Dr. Tufaro's Consectutive Term Contract.

56. The termination decision was made by the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders, who used their positions under color of state law to deprive Dr. Tufaro of his free speech rights.

57. The Official Capacity Defendants, Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders, in their official and individual capacities, continue to harass and undermine Dr. Tufaro ollowing his wrongful termination at OU.

58. The termination decision, made by OU and the Official Capacity Defendants, Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders, was motivated by retaliation for Dr. Tufaro's speaking out about matters of public concern, and was the proximate and legal cause of Dr. Tufaro's damages.

59. Dr. Tufaro's damages include loss of a job, back pay, front pay, damage to his reputation, emotional distress, punitive and other damages.

60. The Official Capacity Defendants' Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders' conduct violates Dr. Tufaro's constitutional rights to speak on matters of public concern.

EXHIBIT 3

61. The Official Capacity Defendants' Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders' conduct, in their individual capacities, was willful and in wanton disregard of Dr. Tufaro's constituional rights warranting an award of punitive damages.

62. Dr. Tufaro is entitled to injunctive relief, including reinstatement, against OU and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders (in their official capacity).

63. Dr. Tufaro is entitled to his attorney fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT II
## BREACH OF CONTRACT
(Against OU)

64. Dr. Tufaro incorporates the allegations contained in Paragraphs of 1-63 of the Petition herein.

65. OU breached the Contract with Dr. Tufaro by wrongfully terminating his consecutive term appointment to the faculty at OU without any reason.

66. The Contract required OU to have a just basis for terminating Dr. Tufaro's employment. OU did not provide any basis for the termination and had no just basis for the termination.

67. OU routinely renews similar appointments unless there is a just basis for terminating the appointment.

68. At all times during the term of his appointment, Dr. Tufaro fulfilled all terms of the Contract.

69. Dr. Tufaro's damages include loss of a job, back pay, front pay, damage to his reputation, emotional distress, punative and other damages.

EXHIBIT 3

## COUNT III
## DUE PROCESS CLAIM

(Against OU and Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders -- in their individual and official capacities)

70. Dr. Tufaro incorporates the allegations contained in Paragraphs of 1-69 of the Petition herein.

71. Dr. Tufaro had a reasonable expecation of continued employment based on his Contract and the provisions in the Faculty Handbook.

72. Dr. Tufaro therefore had a property interest in his continued employment at OU.

73. The Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983, forbids OU and the Official Capacity Defendants from depriving Dr. Tufaro of his property interests without due process of law.

74. OU and the Official Capacity Defendants, Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders, in their individual and officaial capacities, deprived Dr. Tufaro of his due process rights by failing to provide him notice of his right to a hearing that was reasonably caclulated to apprise Dr. Tufaro of his rights.

75. Because there was no just reason for his termination, Dr. Tufaro would have likely retained his appointment at OU if he was permitted the appropriate due process hearing.

76. The conduct of OU and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders (in their individual and official capacities) in depriving Dr. Tufaro of his due process proximately caused him damage, including, but not limited to the loss of his job, back pay, front pay, damage to his reputation and other damages.

77. The conduct of the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders was under color of state law.

78. The conduct of the Official Capacity Defendants, Dr. Zubialde, Dr. Edil, Dr.

EXHIBIT 3

Sullivan and Dr. Sanders in their individual capacities, was in willful and wanton disregard of Dr. Tufaro's constitutional rights warranting an award of punitive damages.

79. Dr. Tufaro is entitled to injunctive relief against OU and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders (in their official capacities) including, but not limited to, reinstatement and back pay.

80. Dr. Tufaro is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT IV
## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIP
(Against the Oral Surgeons and Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders in their individual capacity only)

81. Dr. Tufaro incorporates the allegations contained in Paragraphs of 1-80 of the Petition herein.

82. Dr. Tufaro and OU had a Contract that included Dr. Tufaro's reasonable expectation of continued employment.

83. There was no just basis to terminate the agreement.

84. The Oral Surgeons and the Official Capacity Defendants, Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders in their individual capacities and acting outside the scope of their employment, tortiously caused OU to terminate its Contract with Dr. Tufaro.

85. The Oral Surgeons and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders retaliated against Dr. Tufaro for his speaking out on matters of public concern, including his speech regarding the Oral Surgeons' and OU's malfeasance as described herein.

86. The Oral Surgeons and Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders tortiously used their respective positions to cause OU to terminate Dr. Tufaro.

14

EXHIBIT 3

87. The interference with Dr. Tufaro's Contract was intentional and for the purpose of causing OU to terminate the Contract, thereby harming Dr. Tufaro.

88. The Oral Surgeons and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders knew that Dr. Tufaro and OU were parties to the Contract and the terms of the Contract included Dr. Tufaro's reasonable expectation of continued employment.

89. The Oral Surgeons and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders used improper and unfair means to accomplish the termination.

90. Dr. Tufaro's damages include loss of a job, back pay, front pay, damage to his reputation, emotional distress and other damages.

91. The Oral Surgeons' conduct was intentional, malicious, and punitive and deprived Dr. Tufaro of income and reputation. Thus, Dr. Tufaro is entitled to punitive damages in addition to his actual damages.

## COUNT V
## CIVIL CONSPIRACY
(Against the Oral Surgeons and Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders in their indivdual capacities)

92. Dr. Tufaro incorporates the allegations contained in Paragraphs of 1-91 of the Petition herein.

93. OU breached its employment agreement with Dr. Tufaro by refusing to renew his consecutive term appointment to the faculty at OU.

94. At all times, during the term of his appointment, Dr. Tufaro fulfilled all terms of the employment agreement. There was no basis to refuse to renew the Contract.

95. The Oral Surgeons and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders jointly conspired to cause OU to terminate Dr. Tufaro's employment because Dr. Tufaro spoke out about matters of public concern regarding malfeasance by the Oral

EXHIBIT 3

Surgeons.

96. Dr. Tufaro's damages include loss of a job, back pay, front pay, damage to his reputation, emotional distress, and other damages.

97. The Oral Surgeons and Official Capacity Defendants, Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders acting outside the scope of their employment, engaged in intentional, malicious, and punitive actions and deprived Dr. Tufaro of income and reputation. Thus, Dr. Tufaro is entitled to punitive damages in addition to his actual damages.

## COUNT VI
## VIOLATION OF THE OKLAHOMA CONSTITUTION
(Against OU and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders)

98. Dr. Tufaro incorporates the allegations contained in Paragraphs of 1-97 of the Petition herein.

99. OU and the Official Capacity Defendants, Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders in their official and individual capacities, terminated Dr. Tufaro in retaliation of his protected speech as described herein in violation of his rights under Art. 2, §22 of the Oklahoma Constitution- Oklahoma's free speech clause.

100. Such reports were not part of Dr. Tufaro's job duties and were not a communication required of Dr. Tufaro's position at OU, and therefore are protected by Art. 2, § 22.

101. Dr. Tufaro's damages include loss of a job, back pay, front pay, damage to his reputation, emotional distress, and other damages.

102. The Official Capacity Defendants' conduct was intentional, malicious, and punitive and deprived Dr. Tufaro of income and reputation. Thus, Dr. Tufaro is entitled to punitive damages in addition to his actual damages.

103. Dr. Tufaro incorporates the allegations contained in Paragraphs of 1-102 of the

16

EXHIBIT 3

Petition herein.

104. Dr. Tufaro's reported wrongdoing of the Oral Surgeons was in furtherance of Oklahoma's public policy. The reports involved the Oral Surgeons' misuse of public funds, violations of the regulations governing Medicare and Medicaid and potentially other laws.

105. OU's termination of Dr. Tufaro's employment was in retaliation for these reports and therefore the termination constitutes a public policy discharge.

106. Dr. Tufaro's damages include loss of a job, back pay, front pay, damage to his reputation, emotional distress, punitive, and other damages.

## COUNT VII
## VIOLATION OF LIBERTY INTEREST
(Against OU and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders and in their individual capacities, and Dr. Tiwana and Dr. Smith)

107. Dr. Tufaro incorporates the allegations contained in Paragraphs of 1-106 of the Petition herein.

108. Dr. Tufaro had a reasonable expecation of continued employment based on his Contract and the provisions in the Faculty Handbook and had a reasonable expectation that his good name and reputation would not be misused or disparaged by the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders in their individual capacities, and Dr. Tiwana and Dr. Smith.

109. Dr. Tufaro therefore had a liberty interest in his good name and reputation and the right to a name clearing hearing based on the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders and in their individual capacities, and Dr. Tiwana and Dr. Smith's violation of his property right to continued employment and otherwise at OU.

110. The Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983, forbids OU and the Official Capacity the Official Capacity Defendants Dr.

EXHIBIT 3

Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders and in their individual capacities and Dr. Tiwana and Dr. Smith Defendants from depriving Dr. Tufaro of his liberty interests without due process of law.

111. OU and the Official Capacity Defendants, Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders, in their individual and official capacities, deprived Dr. Tufaro of his liberty interests by failing to provide him notice of his right to a name clearing hearing and by their false allegations concerning Dr. Tufaro both while he was employed at OU and continuing thereafter. Dr. Tufaro's good name, reputation, honor, and integrity has been compromised and damaged by the conduct of each of the defendants. The Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders and in their individual capacities, and Dr. Tiwana and Dr. Smith's actions have been widely disseminated.

112. Because there was no just reason for the non-renal of his contract, Dr. Tufaro would have likely retained his appointment at OU if he was permitted the appropriate name clearing hearing.

113. The conduct of OU and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders (in their individual and official capacities) in depriving Dr. Tufaro of his liberty interest rights proximately caused him damage, including, but not limited to the loss of his job at OU, back pay, front pay, damage to his reputation and other damages.

114. The conduct of the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders was under color of state law and acted in concert with Dr. Tiwana and Dr. Smith.

115. The conduct of the Official Capacity Defendants, Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders in their individual capacities and in concert with Dr. Smith and Dr.

18

**EXHIBIT 3**

Tiwana, was in willful and wanton disregard of Dr. Tufaro's constitutional rights warranting an award of punitive damages.

116. Dr. Tufaro is entitled to injunctive relief against OU and the Official Capacity Defendants Dr. Zubialde, Dr. Edil, Dr. Sullivan and Dr. Sanders (in their official capacities) and against Dr. Tiwana and Dr. Smith.

117. Dr. Tufaro has been harmed by loss of his reputation, loss of his position at OU, loss of income from his position at OU, continues to be economically injured and has suffered emotional and mental distress and other harm. Dr. Tufaro is entitled to punitive damages and attorneys' fees.

118. Dr. Tufaro has suffered damage to his good name, reputation, honor, and integrity.

119. Dr. Tufaro is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

Wherefore, Dr. Tufaro requests the Court to enter judgment in his favor on each claim listed in this Petition, award him actual and punitive damages, injunctive and declaratory relief, costs and resonable attorney fees, and such other relief as is appropriate.

Respectfully submitted,

Shannon F. Davies, OBA No. 13565
George S. Freedman, OBA No. 15764
Spencer Fane LLP
9400 North Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114-7423
Telephone: (405) 844-9900
Facsimile: (405) 844-9958
Email: sdavies@spencerfane.com
gfreedman@spencerfane.com
**Attorneys for Plaintiff, Dr. Anthony P. Tufaro, D.D.S., M.D., F.A.C.S.**

**ATTORNEY'S LIEN CLAIMED**

EXHIBIT 3